WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

New Cingular Wireless PCS, LLC., )
          Plaintiff, )
           )    CV 10-28 TUC DCB
v. )
           )    **O R D E R**
Board of Supervisors of Pima County, Arizona, )
          Defendants, )
_____ )

      On July 29, 2009, New Cingular Wireless (Cingular) submitted an application on behalf of property owner Cottonwood de Tucson, Inc., for a Type III conditional use permit (CUP) to install a cell-phone tower that would be 65 feet tall, which was subsequently reduced to 55 feet. The tower would be a "monopalm" design, meaning it would be designed to resemble a palm tree. On December 15, 2009, after a public hearing and unanimous vote to deny the CUP, the Defendant, Pima County Board of Supervisors (Board), issued a written decision. The Board found that there were "significant aesthetic issues with the location of the proposed tower" and that "[d]ue to the unique scenic features in the area and topography in the area this tower will adversely affect the views of neighboring property owners and views of the Tucson Mountains." (SOF ¶ 45.) The Board found the proposed camouflage was insufficient to offset the adverse visual effect of the tower and denied the CUP. *Id.*

      Cingular filed this action on January 14, 2010. Cingular alleges that the Board's decision violates the Telecommunications Act of 1996 (TCA), which prohibits local government regulation that "prohibits or has the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B). In addition, Cingular alleges that the Board's denial of Cingular's application was not supported by substantial evidence, in violation of 47 U.S.C. §

332(c)(7)(B)(iii).  The parties agree that the question of whether Defendant's decision was supported by substantial evidence may be decided by dispositive motion.  On May 19, 2010, Defendant filed the Motion for Partial Summary Judgment to resolve this question.  It is now fully briefed.  Under the TCA, this case is decided on an expedited basis.  47 U.S.C. § 337(c)(7)(B)(v).

The Telecommunications Act

The TCA embodies two sometimes contradictory purposes. First, "to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies," *T-Mobile USA Inc., v. City of Anacortes*, 572 F.3d 987, 991 (9th Cir. 2009) (quoting Pub. L. No 104-104, 110 Stat. at 56), Congress chose to "end the States' longstanding practice of granting and maintaining local exchange monopolies," *id.* (quoting *Sprint Telephony PCS, L.P. v. County of San Diego, Sprint II,* 543 F.3d 571, 576 (9th Cir. 2008)).  Second, it did so by enacting 47 U.S.C. § 253, *id.*, which reads, in relevant part: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).

Subsection c addresses state regulatory authority and provides: "Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(c).  Congress further made it clear that the second purpose of the Act was "to preserve the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement." *Anacortes*, 572 F.3d at 992 (quoting *Sprint II*, 543 F.3d at 576).

This legislative purpose was reflected in the enactment of 47 U.S.C. § 332(c)(7)(A), which "preserves the authority of local governments over zoning decisions regarding the placement and construction of wireless service facilities, subject to enumerated limitations in

§ 332(c)(7)(B). *Id.* "The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government . . . shall not unreasonably discriminate among providers of functionally equivalent services and shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i). Further, "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

The issue before the Court is whether the Board's decision denying the CUP for the monopalm design wireless tower on Cottonwood de Tucson property was supported by substantial evidence. The Ninth Circuit considered the requirement in § 332(c) that a local zoning decision be supported by substantial evidence in *MetroPCS, Inc. v. City of San Francisco*, 400 F.3d 715 (9th Cir. 2005). "[A]lthough the term 'substantial evidence' was not defined in the TCA, there appeared to be 'universal agreement among the circuits as to the substantive content of this requirement'-'this language is meant to trigger the traditional standard used for judicial review of agency decisions.'" *Anacortes*, 572 F.3d at 992-993 (citing *MetroPCS*, 400 F.3d at 723 (internal citation omitted)). Most important, "'the substantial evidence inquiry does not require incorporation of the substantive federal standards imposed by the TCA, but instead requires a determination whether the zoning decision at issue is supported by substantial evidence in the context of applicable state and local law.'" *Anacortes*, 572 F.3d at 993 (citing *MetroPCS*, 400 F.3d at 723-24).

This means that the substantial evidence assessment is made based on applicable state and local regulations. *Anacortes*, 572 F.3d at 993 (citing *MetroPCS* 400 F.3d at 724). "'If the decision fails that test it, of course, is invalid even before the application of the TCA's federal standards.'" *Id.* By this approach, we "avoid unnecessarily reaching the federal questions of whether a zoning decision violates the substantive provisions of the TCA.'" *Id.* "'[I]n most cases, only when a locality applies the regulation to a particular permit application and reaches a decision-which it supports with substantial evidence-can a court determine whether the TCA

- 3 -

has been violated.'" *Id.* To establish a substantive violation of the TCA, "a plaintiff must establish either an outright prohibition or an effective prohibition on the provision of telecommunications services; a plaintiff's showing that a locality could potentially prohibit the provision of telecommunications services is insufficient." *Anacortes*, 572 F.3d at 993 (citing *Sprint II,* 543 F.3d at 579).

As suggested in *MetroPCS*, the Court first considers whether the Board's denial under the zoning regulations is supported by substantial evidence. *Anacortes*, 572 F.3d at 994 (citing *MetroPCS*, 400 F.3d at 724). This is the question raised in the Defendant's Motion for Partial Summary Judgment.  In the event the Court concludes the denial is supported by substantial evidence under the applicable local laws, the question of whether the denial substantively violates the TCA, § 332(c), remains.  The Court anticipates this will be the subject of a subsequent motion.

## Discussion

The standard of review is the traditional highly deferential standard used for judicial review of an agency decision. *MetroPCS*, 400 F.3d at 723.  Substantial evidence exists if there is less than a preponderance, but more than a scintilla of evidence.  "'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (9th Cir. 1999).

As described by Plaintiff, its application is for a "monopalm" cell tower, camouflaged with the tower covered in faux bark and the antennas painted to match and surrounded by faux palm fronds.  (Response at 2.)  "Only the top of the monopalm would be visible from outside the expansive Cottonwood de Tucson property where the monopalm would be located." *Id.* The monopalm would be surrounded by other existing vertical elements such as numerous (10) real palm trees on the property, and utility poles and wires on nearby roads.  "In short, the proposed monopalm would be virtually indistinguishable from its surroundings, as shown by the photo simulations New Cingular submitted to the Board." *Id.* The Plaintiff asserts that public comments to the contrary are "pure speculation' and cannot constitute substantial evidence to justify the County Board of Supervisor's denial of the cell tower application. *Id.*

"But even if it did, that 'evidence' would be insufficient to support the Board's decision because under local law the Board could not deny New Cingular's application on the basis of adverse effects alone." *Id.* at 6.

Plaintiff agrees with the Defendant that "the ultimate question is whether the Board's decision is authorized by state and local regulation and supported by substantial evidence." *Id.* (citing Motion for Summary Judgment at 8.) Plaintiff does not agree, however, that the Board has "unfettered discretion" to grant or deny an application. *Id.* at 7. Plaintiff argues that the Board is constrained by the Pima County Code, which "permits '[c]ommunications towers . . . in *any* zone,' if they meet the requirements of subsection 18.07.030(H), the part of the Code that specifically concerns cellular towers." *Id.* "Subsection 18.07.030(H) contains numerous specific requirements for communications towers, including detailed set-backs, ground equipment screening, lighting, access, and parking." *Id.* Undisputably, the monopalm satisfies every requirement.

The Code also provides, "[t]he applicant may be required to disguise, conceal or camouflage a tower and/or antenna to ensure visual compatibility with the surrounding area." 18.07.030(H)(3)(e). Plaintiff has camouflaged the tower, and Defendant has proposed no further camouflage requirement nor cited to any. Instead, Defendant simply denied the tower on the basis of aesthetics, which Plaintiff argues it cannot do because all the specific requirements in the Code have been met. (Response at 7.)

Here, the record reflects that the Hearing Administrator found the communication tower to be an acceptable and compatible use on the property, and he recommended approval of the monopalm cell tower. (Administrative Record (AR) 36-37.) Under the Plaintiff's reading of the Code, the only avenue available to the Board is through camouflage requirements, and there is no evidence that anything more could "ensure [greater] visual compatibility with the surrounding area." *Id.* at 8. Accordingly, the CUP should have been granted.

Instead, after public hearing and comment, the Planning and Zoning Commission voted 4 to 2 to deny the tower because of: "1) neighborhood opposition, lack of apparent voice-coverage need, and aesthetics." *Id.* at 34. After further public hearing and comment, the Board

- 5 -

of Supervisors issued a written decision that there were "significant aesthetic issues with the location of the proposed tower. Due to the unique scenic features in the area and topography of the area this tower will adversely affect the views of neighboring property owners and views of the Tucson Mountains. The proposed method of camouflage is insufficient to offset the adverse visual effect of the proposed tower." *Id.* at 129.

The Board denied the Conditional Use Permit, pursuant to "[t]he conditional use process[, which] is designed to provide zoning flexibility to allow uses with potentially adverse impacts where negative impacts are appropriately minimized. When reviewing a Conditional Use Permit for a communication tower, Section 18.07.030(H) of the Pima County Code ('P.C.C.') directs the Board to review the proposal with the purpose of maximizing the use of existing towers to reduce the number of new towers, minimize the adverse visual effects of towers through careful design, siting and screening and avoid potential damage from tower failures." *Id.* at 128.

The Defendant objects to "adverse impacts" and "adverse visual effects" as a basis for denying the tower application because these provisions are "part of the "Purpose' section," of the Code which "merely explains why conditional uses require a special review process and does not "override the specific factors established in the Code for review of an application," which here have undisputably been met. (Response at 7) (citing *Cronin v. Sheldon*, 195 Ariz. 531, 538 (Ariz. 1999) (a preamble is not statutory text and is devoid of operative effect). While this may be generally true, here, the Code expressly provides: "When interpreting the specific language of the zoning code, ambiguities and conflicting provisions shall be resolved by reference to the following guidelines: 1) The *chapter purpose statements*, the general purpose of the zoning code and the type and intent of the zone; 2) Use compatibility within a zone; 3) Impact on other property within the zone, and adjacent or affected property; 4) Context of the section; and 5) Compatibility with applicable zoning code sections and other Pima County Regulations. . . .." 18.01.040(C) (emphasis added). The purpose section of the CUP section of the Code is operative in this case.

The purpose of the Code section covering communication towers "is to minimize the adverse visual effects of towers through careful design, *siting* and screening." 18.07.030(H)(1)(b). The Board of Supervisors acted within their discretion when they considered the aesthetic implications of the cell tower application on the site and surrounding properties.

It is undisputed that communication towers, which are allowed in all zones, require, with some exceptions not applicable here, a Type III Conditional Use Permit. 18.07.030(H)(2)(d). A conditional use is a use which, due to its greater potential for nuisance or hazard than other uses of the zone, has its establishment in a zone conditional upon the procedures and standards of [the] chapter. 18.97.010(A)(2). The purpose of the Conditional Use Procedures is to provide zoning flexibility to allow conditional uses, but due to the potentially adverse impacts of such uses the Code requires specific review processes. 18.97.010 (Purpose). A Type III Permit requires public hearings before the Planning and Zoning Commission and the County Board of Supervisors. It requires a staff report by the hearing administrator. The hearing administrator's report must "analyze the expected impact of the proposed development on the site and surroundings, . . .." 18.97.030(H)(2)(a)(2).

The Planning and Zoning Commission must hold a public hearing, 18.97.030(F)(3)(a), after proper public notice to owners of property within one thousand feet of the subject property, 18.97.030(D)(4). At the hearing, the administrator may require the petitioner to present information adequate to illustrate that the proposed use provides, among other things, safeguards for the protection of adjacent developed property. 18.97.030(F)(3)(c)(2). After a recommendation from the Planning and Zoning Commission, the Board is required to hold a public hearing. 18.97.030(H)(a).

The specific review process for CUP Type III permits involves two public hearings, with notice to neighboring property owners and opportunity to be heard. The CUP expressly provides for the Planning and Zoning Commission and Board of Supervisor votes to be after public hearing and comment. The only reasonable conclusion is that the CUP requires the

Board to take into consideration the concerns of neighboring property owners, including the aesthetics of a project.

Aesthetics, like other public goals such as safety are valid considerations for a zoning board. *Anacortes*, 572 F.3d at 994 (citing *Sprint II*, 543 F.3d at 580, *and see also T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County, Kan.*, 546 F.3d 1299, 1312 (10th Cir.2008) (noting that "aesthetics can be a valid ground for local zoning decisions"); *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 494 (2d Cir.1999) (recognizing that "aesthetic concerns can be a valid basis for zoning decisions"); *Voice Stream PCS I, LLC v. City of Hillsboro,* 301 F.Supp.2d 1251, 1255 (D.Or.2004) (same)).

Here, the public comments focused specifically on the adverse visual impact at the particular location. *See e.g.*, *Anacortes*, 572 F.3d at 994 (finding substantial evidence existed where number of residents claimed that a monopole would interfere with scenic view of Cascade Mountains); *Voice Stream*, 301 F. Supp. 2d at 1258 (finding that when evidence specifically focuses on adverse visual impact at particular location at issue more than a mere scintilla of evidence generally exists). The comments at the public hearings reflected concerns that the design is obviously metallic, it is markedly higher than the existing palm trees and does not blend with them; it does not fit in at all with the other natural desert trees in the surrounding area; the monopalm would have an adverse visual impact of the rolling hills and protected peaks and ridges in the area, including the Tucson Mountains; it would be a visual blight on the designated scenic route, and it would negatively change the view shed of the area. The community and the Board questioned whether the applicant could use multiple shorter poles, with a design more conducive to the natural vegetation in the area. (TR at 128-129: Decision.)

The public had available to it for review and comment the photo-simulation of the monopalm, as it would look once installed. This defeats the Plaintiff's contention that the public comments were "mere speculation" because the monopalm is "indistinguishable" from the existing palm trees. (Response at Ex. A; TR at 61-62.) There was substantial evidence to
/////

support the Board's denial of the application. It remains to be seen, whether the denial of the application constituted an effective prohibition of services in violation of the TCA.

**Accordingly,**

**IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (doc. 20) is GRANTED because there was substantial evidence to support the denial of the CUP application pursuant to the Pima County Zoning Code.

**IT IS FURTHER ORDERED** affirming the case management schedule previously set in the Order issued by the Court on September 24, 2010 (doc. 30), specifically as follows: 1) Plaintiff shall make expert discloses by February 1, 2011, Defendant shall make expert disclosures within 30 days of Plaintiff's disclosures, and Plaintiff may have 15 days, thereafter, to disclose any rebuttal expert opinions; 2) discovery shall be completed by May 1, 2011; 3) dispositive motions shall be filed by June 1, 2011, and 4) the proposed Joint Pretrial Oder shall be filed by July 1, 2011.

DATED this 4th day of January, 2011.

David C. Bury
United States District Judge